## CIRCUIT COURT OF THE CITY OF ALEXANDRIA

Commonwealth of Virginia,
Dept. of Mental Health etc.

v.

First Am. Bank of Va., Trustee

December 7, 1982

Cases No. (Law) 7418 and (Chancery) 13335

By JUDGE WILEY R. WRIGHT, JR.

In Law No. 7418 the Department of Mental Health and Mental Retardation has petitioned the Court, pursuant to Code § 37.1-110, for an order compelling the defendant to pay the unreimbursed expenses for the care, treatment and maintenance of William L. Peck, who has been a patient at the Lynchburg Training School and Hospital since 1941. In Chancery No. 13335 the Commissioner of the Department of Mental Health and Mental Retardation has petitioned the Court to reform a trust agreement so as to require the defendant to pay such expenses. By agreement of counsel, the cases were consolidated for trial; however, during the course of the hearing, the petition for reformation was nonsuited.

The defendant is the successor trustee of a trust agreement dated June 11, 1964, between Theodore A. Peck and his then wife, Josephine A. Peck, grantors, and Arlington Trust Company, trustee. The trust agreement was amended by a trust agreement dated June 27, 1968, and by an amendment to trust agreement dated July 7, 1972.

Josephine A. Peck died on October 1, 1964. Theodore A. Peck died on November 8, 1978, and his last will and testament was executed on April 9, 1975.

During the five-year period between February 1, 1977 and January 31, 1982, William L. Peck incurred un-

reimbursed expenses in the amount of $15,948.00. As of July 27, 1982, the principal balance of the trust being administered by the defendant was $6,161.30, including accumulated income. The petitioner has made demand for payment of the funds the defendant is holding, and the defendant has responded that its fiduciary responsibilities preclude it from doing so.

The 1964 trust agreement provided that, during the lifetime of the grantors, the grantors, or the survivor thereof, were to receive all of the net income of the trust estate. Upon the death of the grantors, the trustee was to pay to the Lynchburg Training School and Hospital the sum of $5.00 semi-monthly from the net income of the trust estate for the benefit of William L. Peck, the mentally-retarded son of the grantors, so long as he resided at said Hospital. In addition, the trustee was authorized in its absolute discretion to pay any person or institution deemed suitable by the trustee such additional amounts of income and principal as the trustee deemed necessary or advisable for the care, maintenance and support of William L. Peck. Upon the death of William L. Peck, the remaining income and principal of the trust was to be distributed to the Virginia Department of Mental Hygiene and Hospitals for the use of the Lynchburg Training School and Hospital.

The 1968 trust agreement recited that the grantor's purpose was, *inter alia*, to provide spending money for William L. Peck. Taking cognizance of the death of Josephine A. Peck and of the deposit of an additional sum with the trustee, this trust provided for the continuation of the 1964 trust; and directed the trustee to accumulate the income and pay therefrom the sum of $5.00 semi-monthly for the benefit of William L. Peck, so long as he resided at the Lynchburg Training School and Hospital. Upon the death of the grantor, the trustee was directed to pay the sum of $75.00 per month from the income of the trust estate, which was to be increased by a bequest from the grantor, to the Virginia Department of Mental Hygiene and Hospitals for the account of the Lynchburg Training School and Hospital, so long as William L. Peck continued to be a patient at said Hospital. If the income was insufficient to make the combined payments, the trustee was authorized to invade the principal of the trust estate. This trust also authorized the trustee, in its absolute discretion, to pay such additional sums to any persons

or appropriate institution as it deemed necessary for the care, maintenance and support of William L. Peck, and provided that such payments were to take precedence over the $75.00 monthly payments to the Virginia Department of Mental Hygiene and Hospitals. Upon the death of William L. Peck, the remaining corpus of the trust estate was to be paid over to the Virginia Department of Mental Hygiene and Hospitals for the use of the Lynchburg Training School and Hospital, provided William L. Peck was still a patient there at the time of his death. If he was not such a patient, the corpus was to be paid to Trinity College.

The 1972 amendment of the trust agreement made note of the amendment by the 1972 session of the General Assembly of Code § 37.1-105, which limited the liability of relatives of a state hospital patient after institutionalization for a period of sixty months. This amendment to the 1968 trust agreement deleted the requirement that the trustee pay the sum of $75.00 per month to the Virginia Department of Mental Hygiene and Hospitals for so long as William L. Peck was a patient at the Lynchburg Training School and Hospital. Also deleted was the provision leaving the corpus of the trust estate upon the death of William L. Peck to either the Virginia Department of Mental Hygiene and Hospitals or Trinity College; and substituted in lieu thereof was a provision that the trust estate would pass to the "Grantor, his estate, or his lawful heirs as the case may be, and pursuant to the provisions of his Last Will and Testament."

Article Four of the Last Will and Testament of Theodore A. Peck provides that the trust estate shall be distributed in accordance with the trust agreement dated June 11, 1964, and all amendments thereto, such trust agreement to become irrevocable upon the death of the testator.

In summary, the 1964 trust agreement as amended requires the trustee to pay the sum of $5.00 semi-monthly for the benefit of William L. Peck, so long as he continues to be a patient at the Lynchburg Training School and Hospital, and gives the trustee unfettered discretion to pay such additional sums as it deems necessary to whomever it deems appropriate for the proper care, maintenance and support of William L. Peck. Although all of the beneficiaries named in the will survived Theodore A. Peck and are alive today, the ultimate beneficiaries

of the trust cannot be determined until the death of William L. Peck.

Counsel for the defendant asserted during oral argument that the statutes upon which the petitioner relies are unconstitutional. The main force of this argument was directed against Code § 55-19.1, and was mooted by the nonsuit of the petition for reformation. Insofar as the argument was also intended to apply to Code Section 37.1-110 and the other sections that must be read in connection therewith, I find it to be without merit.

The remaining issue for determination is whether the funds being held in trust for the benefit of William L. Peck are subject to the claim of the Department of Mental Health and Mental Retardation. Counsel have cited several authorities in support of their respective positions, some of which are difficult, if not impossible, to reconcile.

An annotation found in 92 A.L.R.2d 838 (1963) sets forth the prevailing view on this issue as follows:

> Armed in most jurisdictions with authority to recover from the incompetent as well [as] certain specified kinfolk, the question has inevitably arisen, may the state reach property such as a trust fund in which the incompetent holds only a beneficial interest?
>
> A substantial number of courts have answered the question in the affirmative and, apart from considerations peculiar to the individual case, accord the public a general right to reach and recover from trust funds its costs for institutional maintenance of the incompetent beneficiary.
>
> One factor often discussed by the courts in determining whether a particular trust is vulnerable to the claims of the public authorities is the intention of the settlor in establishing the trust. The trust is especially vulnerable where it appears that it was the settlor's intent in establishing it to provide for the general benefit and support of the incompetent. The converse is also true and the principal modern instances in which the state's recovery has been restricted or denied are cases where the settlor was explicit in

stating his intention that the fund be used for purposes other than general support and maintenance. (92 A.L.R.2d 841-842).

The 1964 trust agreement and the amendments thereto manifest an intention on the part of the grantor to provide an allowance for spending money while his son remains a patient at the Lynchburg Training School and Hospital. Beginning with the 1972 amendment, the grantor made it clear that it was no longer his intention that the Department of Mental Hygiene and Hospitals be the recipient of funds from the trust. When considered in light of the surrounding circumstances and the other language of the amended trust agreement, the provision empowering the trustee to make discretionary payments for the care, maintenance and support of the grantor's son was obviously intended to provide the trustee with sufficient flexibility to use the trust funds for supplementary as opposed to general support and maintenance. The modest size of the trust fund is also indicative of the restricted or limited purpose for which it was intended. Thus, it would totally frustrate the intention of the grantor if the petitioner were permitted to lay claim to the trust fund.

Code § 37.1-112 requires the Court to consider the financial condition and estate of the patient and his present and future needs. There is no indication that William L. Peck has any estate other than the trust fund, and when viewed in light of the purchasing power of today's dollar, the size of the estate is not very large. Furthermore, there is reason to believe that William L. Peck may move from the Lynchburg Training School and Hospital to an adult home in Winchester, Virginia, in which event he may have greater needs than he has in his present circumstances. Thus, these factors do not support a compelling case in favor of the petitioner.

In reaching my decision I have not been unmindful of the public policy considerations that enter into this case. If the State is to provide hospitals at public expense, then unreimbursed costs should be paid by the patient or those legally responsible for his support to the extent payment does not cause financial hardship. *Commonwealth v. Sheriff of Nottoway*, 221 Va. 306 (1980). Under the circumstances of this case, public policy is outweighed by the factors which militate in favor of the defendant.

The prayer of the petition will be denied and the petition will be dismissed.